IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEIICHI ARITOMO and JOY ZHANG, <br><br> *Plaintiffs*, <br><br> vs. <br><br> YOUNGJOO ("JULIA") RHEE; ALEKSEY IGUDESMAN; and MUSIC TRAVELER Gmbh, <br><br> *Defendants*. | Civil Action No. 1:21-cv-4875 <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs Keiichi Aritomo ("Aritomo") and Joy Zhang ("Zhang," together with Aritomo, "Plaintiffs"), by and through their undersigned counsel, for their Complaint against Defendants Youngjoo "Julia" Rhee ("Rhee"), Aleksey Igudesman ("Igudesman"), and Music Traveler Gmbh ("Music Traveler" or the "Company," together with Rhee and Igudesman, "Defendants"), allege as follows:

### NATURE OF THE ACTION

1. This is an action arising out of Rhee and Igudesman's fraudulent inducement of Aritomo and Zhang to invest in Music Traveler and Defendants' subsequent breaches of their contractual obligations under the Simple Agreement for Future Equity Agreement dated September 12, 2018 and the valid amendments thereto executed on October 11, 2018 (the "SAFE").

2. Among other things, Defendants were contractually obligated to establish and maintain a Japanese branch of the Company led by Plaintiffs in exchange for Plaintiffs' investments in the Company. The SAFE also required Defendants to pay Plaintiffs bonuses based

on soliciting additional investments in the Company, which they did. This lawsuit arises out of Defendants' breaches of these obligations.

3. Upon notification of their breaches, Defendants promised to return to Plaintiffs their total investment in the Company. They have failed to do so.

4. Accordingly, Defendants have unlawfully converted, at a minimum, over $100,000 from Plaintiffs' investment funds in violation of the SAFE.

5. In this litigation, Plaintiffs seek: (i) a declaration that Defendants' actions constitute a breach under the SAFE; (ii) specific performance requiring Defendants to (a) return to Plaintiffs all amounts that Plaintiffs are owed pursuant to their agreements, and (b) provide Plaintiffs an accounting related to their investments in the Company; (iii) an order of attachment consistent with NYCPLR 6201; and (iv) to recover all damages that Plaintiffs are entitled to, including all amounts due and owing (which amounts exceed $100,000), attorneys' fees and costs of bringing this suit.

**PARTIES**

6. Plaintiff Aritomo is a citizen of the country of Japan. His primary residence is in Japan.

7. Plaintiff Zhang is a citizen of the United States of America. Her primary residence is in Japan.

8. Defendant Rhee is a citizen of South Korea. She resides in New York, New York.

9. Defendant Igudesman is a citizen of the Republic of Austria. His primary residence is in Vienna, Austria.

10. Defendant Music Traveler is incorporated in the Republic of Austria and has its principal places of business in New York, New York and Vienna, Austria.

## JURISDICTION AND VENUE

11. This court has subject matter jurisdiction of this action under 28 U.S.C. § 1332(a)(1). Diversity jurisdiction exists because there is complete diversity of citizenship between each Plaintiff and each Defendant, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. This court has personal jurisdiction over the parties pursuant to the terms of the SAFE, whereby the Parties agreed that "any legal proceeding concerning this agreement may be brought in any court in the State of New York having jurisdiction . . . [and] [b]oth parties hereby submit irrevocably to the jurisdiction of these courts." In addition, one or more of the contracts at issue were negotiated in the State of New York, and Defendants conduct substantial business in the State of New York.

13. Venue is also proper in this District pursuant to the terms of the SAFE, whereby both Parties agreed that "any legal proceeding concerning this agreement may be brought in any court in the State of New York having jurisdiction."

## FACTS

14. Music Traveler is a company that solicits customers to book performance and rehearsal space for music, singing, and other artistic-related purposes. It is the leading company of its kind and markets itself as being like AirBnB in that it connects people with performance space and lesson instructors.

15. Music Traveler was founded in or around 2016 by Defendants Rhee and Igudesman.

16. Starting in or around 2016, Rhee began to solicit Plaintiffs to invest in Music Traveler.

17. Plaintiffs have experience in the music industry and were told by Rhee that their experience would be beneficial to the Company's growth. Particularly, Rhee told Plaintiffs that the Company wished to enter the Japanese market, and that Plaintiffs would be necessary for the Company to achieve growth and success in Japan.

18. Plaintiffs decided not to invest in the Company in 2016. Rhee's solicitations, however, continued.

19. In or around 2018, Plaintiffs were again approached by Rhee to invest in the Company. Plaintiffs met with Rhee in New York City on or around August 18, 2018.

20. At that meeting, Rhee explained to Plaintiffs that the Company had grown considerably and was at a point where it was ready to expand into Japan. In order for the Company to do so, however, it needed Plaintiffs to invest and join the Company. Plaintiffs made clear that their purpose of investing in the Company would be to lead the Japanese business.

21. Defendants also told Plaintiffs that the Company was raising its second round of seed capital. Defendants attempted to induce Plaintiffs to invest by telling them that the first round of investors includes many famous people, including Billy Joel, Hans Zimmer, and John Malkovich.

22. Upon information and belief, Billy Joel, Hans Zimmer, and John Malkovich were not actually investors in the Company.

23. Rhee told Plaintiffs that instead of investing directly into a Japanese subsidiary of the Company, the Company needed Plaintiffs to invest in their main Austrian business until the Company was ready to establish the Japanese business.

24. Throughout the fall of 2018, Rhee made numerous solicitations of Plaintiffs to obtain their investment into the Company. Plaintiffs, however, were concerned because they

4

wanted to invest directly into the Japanese entity of the Company.  To stop Plaintiffs' concerns, Rhee made a number of promises.  Among them:

    a. Rhee promised that Plaintiffs' investment would be ring-fenced for the expansion of the Company into Japan.

    b. Rhee promised Plaintiffs leadership positions in the Company, including at least one seat on the Company's Board of Directors and positions as COO of the main Company and CEO of the Japanese entity.

25.    Plaintiffs desired more time to consider the investment opportunity and evaluate the promises made by Rhee.  Rhee and Igudesman, however, told Plaintiffs that they did not have much time to consider the investment opportunity.

26.    By mid-September of 2018, Rhee and Igudesman began telling Plaintiffs that they were close to obtaining their initial target capital raise of 350,000 Euros.

27.    Rhee and Igudesman stated that the Company needed Plaintiffs' investment before September 30, 2018, in order to reach the amount of 350,000 Euros in order for the investment to be used for the development of the Japanese business.  Particularly, Rhee told Plaintiffs that their investment was needed to obtain a grant from certain Austrian government agencies, and that Plaintiffs' investment – along with the matching funds received from the grant – would constitute the funds needed to expand the Company into Japan.  Rhee stated that the funds would be 100% matched by the Austrian government (particularly the Vienna Business Agency) and that if Plaintiffs missed the deadline of September 30, 2018, then the Company would not receive the matching funds.

28. Rhee and Igudesman told Plaintiffs that if they did not make their investment by the end of September 2018, the Company would never be able to apply for or obtain the subject government grants again.

29. Plaintiffs did not want to rush their investment and they informed Rhee that they would not be able to make their investment by the September 30, 2018 deadline.

30. Once Plaintiffs told Rhee that they could not meet the September 30, 2018 deadline, Rhee immediately changed her statements regarding the necessity of the investment by that deadline. Specifically, Rhee began telling Plaintiffs that they only needed to promise the investment by that deadline, not actually transfer the funds.

31. Based on Defendants' statements, Plaintiffs signed the Simple Agreement for Future Equity (the "SAFE") on or around September 12, 2018. Plaintiffs desired more time to negotiate certain terms, but Defendants told Plaintiffs it was necessary to first sign the SAFE before additional terms were considered given the purported deadline for receiving government grants. Plaintiffs agreed to sign the SAFE based on Defendants' representations that the SAFE was necessary for receiving government grants, but part of the agreement required negotiations on additional terms of Plaintiffs' involvement in the Company.

32. Part of the subsequent negotiations included a visit to Vienna, Austria, from October 18 to 23, 2018. Plaintiffs told Defendants that they wished to learn more information about the Company during this trip and that, at the conclusion of the trip, if they were satisfied that the investment was worthwhile they would transfer their investment funds after the conclusion of their trip to Vienna. Defendants indicated that this approach would be acceptable.

33. About a month after signing the SAFE, however, Rhee changed course and told Plaintiffs they could not wait until after the Vienna trip to make their investment. On or around

6

October 8, 2018, Rhee told Plaintiffs that the Company needed Plaintiffs' investment by October 8, 2018. Rhee specifically stated that the funds were needed by that date because the Austrian government required it in order to be eligible to receive grant matching funds.

34. Given this new deadline, Plaintiffs were forced to rush their due diligence and submit funds before traveling to Vienna.

35. On October 12, 2018, Plaintiffs and Defendants agreed to an amendment to the SAFE. Upon reaching an agreement, Plaintiffs directed their bank to transfer one hundred thousand Euros (€100,000) to Music Traveler.

36. Plaintiff Zhang traveled to Vienna from October 18 to 22, 2018. During this trip, she uncovered a number of lies from the Defendants.

37. Zhang first discovered that Defendants lied about needing Plaintiffs' investment in order to obtain matching grant funds. In reality, the Vienna Commerce Agency – the department to which Defendants Rhee and Igudesman submitted their grant application – informed Zhang that the grant application was open until the end of 2019, meaning that the Company had until December 31, 2019, to submit an application for matching funds, and that there was no specific threshold of investor money needed to submit an application.

38. Defendants then informed Zhang that, contrary to their promises in inducing Plaintiffs' investment, Plaintiffs' investment funds and any matching grant money received would not be used to further the development of a Japanese branch of the Company. Instead, the money would be used for a separate, unrelated project related to a "Music Box" performance space in Vienna, Austria.

39. Defendants had never previously informed Plaintiffs of the separate Music Box project and never informed Plaintiffs that their investment would be used for anything other than the development of the Japanese business.

40. To explain to Zhang the delay in development over the Japanese business, Rhee told Zhang that Music Traveler could not transfer money into a subsidiary account in Japan because the Vienna Commerce Agency was monitoring the Company's account and prohibited foreign transfers. This was untrue.

41. Plaintiffs were concerned by the realization that Defendants had misled them into investing into the Company. In an attempt to resolve the issues, Plaintiffs repeatedly contacted Rhee and Igudesman to try to speak about the false statements. Defendants refused to speak with Plaintiffs.

42. Plaintiffs wrote emails to Defendants on November 2 and 3, 2018. On November 7, 2018, Samuel Ollunga, a lawyer purporting to represent the Company responded. Despite the fact that Plaintiffs were investors and thus part-owners of Music Traveler, Ollunga stated that Plaintiffs were not part of the Company and were not entitled to Company information.

43. After being rebuffed by Defendants and completely frozen out from the Company, Plaintiffs reported Defendants to Austrian, Japanese, and United States officials.

44. Eventually, on or around December 14, 2018, Rhee promised to Plaintiffs that if the Company did not open a branch of the Company in Japan by the second quarter of 2019, the Company would return to Plaintiffs all money owed to them, specifically including all money invested in the Company on or around September 12, 2018.

45. Music Traveler did not open a Japanese branch in 2019, and has still not opened a Japanese branch.

46. Despite failing to meet such a milestone by the required deadline, Music Traveler has never paid Plaintiffs any money owed to them pursuant to their Agreements and has never repaid Plaintiffs' investment.

47. Defendants' failure to pay Plaintiffs any money as part-owners of the Company is a breach of the SAFE agreement.

48. Defendants' failure to return to Plaintiffs their original investment is a breach of the SAFE agreement and Rhee's subsequent promises to Plaintiffs.

## FIRST CAUSE OF ACTION

### Breach of Contract

49. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

50. The SAFE, including all amendments and subsequent additions, is a valid, binding, and enforceable contract to which Defendants are parties.

51. Plaintiffs are also parties to the agreement and have performed all of their obligations and have the right to enforce the SAFE.

52. The SAFE required Defendants to establish a Japanese branch of the Company and to install Plaintiffs in leadership positions.

53. The agreement further required Defendants to pay Plaintiffs certain funds for soliciting additional investments, which Plaintiffs did.

54. Defendants have failed to pay Plaintiffs amounts owed for soliciting additional investments into the Company.

55. As set forth above, Defendants have breached their obligations to Plaintiffs under the agreements.  Those breaches include: (1) Defendants' breach of their obligations to develop a

Japanese subsidiary of the Company; (2) Defendants' failure to install Plaintiffs in leadership positions in the Company; (3) Defendants failure to pay Plaintiffs required compensation for soliciting additional investments into the Company; and (4) Defendants' failure to return to Plaintiffs their investment once the Company failed to meet certain milestones.

56. Defendants' breaches were material.

57. Defendants' breaches of their contractual obligations have proximately caused injury and damage to Plaintiffs. Plaintiffs have suffered and continues to suffer injury and damages resulting from the breaches in an amount to be determined in this action. Plaintiffs' injury and damages include: damages for unpaid amounts due under the agreements, the costs associated in bringing this suit, including injury to Plaintiffs resulting from Defendants' failure to properly permit Plaintiffs access to company information, which has facilitated Defendants' conversion of sums of money in breach of Plaintiffs' rights, and prevented Plaintiffs from accessing unique bank records necessary to identifying amounts owed to Plaintiffs.

## SECOND CAUSE OF ACTION

**Breach of the Implied Covenant of Good Faith and Fair Dealing/Bad Faith**

58. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

59. The SAFE is a valid, binding, and enforceable contract to which Defendants are parties.

60. Plaintiffs are also parties to the SAFE, have performed all of its obligations, and have the right to enforce the agreement.

61. The SAFE contains an implied covenant of good faith and fair dealing.

62. Pursuant to that implied covenant, Defendants are required to refrain from arbitrary or unreasonable conduct that prevents Plaintiffs from receiving the fruits of its bargain or frustrating the overarching purpose of the agreement.

63. Defendants are obligated to deal fairly and in good faith with Plaintiffs with respect to Defendants' performance of their obligations under the agreement.

64. Defendants' conduct, as described above, breached the implied covenant of good faith and fair dealing.

65. Defendants' conduct, as described above, also was undertaken in bad faith and without any reasonable justification.

66. Defendants' breach of its contractual obligations have proximately caused injury and damage to Plaintiffs. Plaintiffs have suffered and continue to suffer injury and damages resulting from the breaches in an amount to be determined in this action. Plaintiffs' injury and damages include: damages for unpaid amounts due under the SAFE, the costs associated in bringing this suit, including injury to Plaintiffs resulting from Defendants' failure to properly permit Plaintiffs access to company information, which has facilitated Defendants' conversion of sums of money in breach of Plaintiffs' rights, and prevented Plaintiffs from accessing unique bank records necessary to identifying amounts owed to Plaintiffs.

## THIRD CAUSE OF ACTION

### Declaratory Judgment

67. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

68. The SAFE is a valid, binding, and enforceable contract to which Defendants are parties.

69. Plaintiffs are also parties to the SAFE, have performed all of their obligations, and have the right to enforce the agreement.

70. Because of Defendants' breaches as described above, Plaintiffs have a right to terminate the SAFE.

71. As alleged herein, Plaintiffs provided to Defendants notice of their actions giving rise to Plaintiffs' right to terminate the SAFE, among other things, Defendants' failure to develop a Japanese subsidiary and Defendants have refused to cure their actions.

72. An actual controversy exists between Plaintiffs and Defendants that is real and immediate and warrants a declaratory judgment confirming that Defendants' breaches are an event of default that justified Plaintiffs' termination of the agreement.

73. Plaintiffs therefore request a declaration that Defendants' conduct constitutes an event of default under the SAFE.

## FOURTH CAUSE OF ACTION

### Conversion

74. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

75. The SAFE is a valid, binding, and enforceable contract to which Defendants are parties.

76. Plaintiffs are also parties to the SAFE, have performed all of its obligations, and have the right to enforce the agreement.

77. Defendants' agreement with Plaintiffs required Defendants to pay to Plaintiffs a portion of funds as compensation for obtaining additional investments in the Company.

78. The agreement also requires additional compensation as 1/6 owners of the Company.

79. The agreement further required return of Plaintiffs' investment upon the failure of the Company to start a Japanese branch in 2019.

80. Those funds are property owned by Plaintiffs.

81. Defendants are preventing Plaintiffs from access to its property by refusing to return the money after Plaintiffs demanded its return.

82. As a result, Plaintiffs have suffered damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### Fraudulent Inducement

83. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

84. As alleged herein, Defendants made multiple statements to Plaintiffs in inducing their investment into Music Traveler, including that the funds were needed by September 2019 to obtain matching grant money and that the investment money would be used to start a Japanese subsidiary.

85. Defendants' representations were statements of fact.

86. Plaintiffs reasonably relied on Defendants' statements and justifiably acted upon them by investing in the Company based on those representations.

87. Defendants' representations were false.

88. As a result, Plaintiffs have suffered damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ask that the Court enter judgment as follows:

1. An order, pursuant to Federal Rule of Civil Procedure 64 and NYCPLR 6201 for attachment, preventing Music Traveler from using or dissipating any assets or any account in which Music Traveler has deposited funds generated from Plaintiffs' investment. This relief is appropriate and warranted because Music Traveler is a nondomiciliary residing outside New York and already has unlawfully converted funds and may continue to do so.

2. A declaration that Defendants' conduct constitutes an event of default under the SAFE and that Plaintiffs are permitted to terminate the agreement.

3. An order requiring Defendants to pay all funds unlawfully withheld from Plaintiffs, including their original investment, compensation for soliciting additional investments, and compensation for maintaining their positions as 1/6 owners of the Company.

4. An award of all compensatory, punitive and/or equitable damages against Defendants, compensating for Plaintiffs' damages and injuries resulting from Defendants' breaches and unlawful conversions as set forth herein;

5. Indemnification for Plaintiffs' attorneys' fees and costs associated with enforcing its legal rights under the agreements;

6. Prejudgment interest at the maximum legal rate; and

7. Any and all relief that Plaintiffs are otherwise entitled to at law or equity.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all claims so triable.

|  |  |
|---|---|
| Dated: June 2, 2021 | WINTHROP & WEINSTINE, P.A. |
|  | *s/ Devon C. Holstad* <br> Devon C. Holstad (#5339221) |
|  | 225 South Sixth Street, Suite 3500 <br> Minneapolis, MN 55402 <br> Tel: (612) 604-6400 <br> Fax: (612) 604-6816 <br> dholstad@winthrop.com |
|  | ***Attorneys for Plaintiffs*** |

21894882v1