UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:
```

KEIICHI ARITOMO and JOY ZHANG,

                              Plaintiffs,

                v.                                                No. 21-CV-4875 (RA)

YOUNGJOO ("JULIA") RHEE, ALEKSEY                                  OPINION & ORDER
IGUDESMAN, and MUSIC TRAVELER
Gmbh,

                              Defendants.

RONNIE ABRAMS, United States District Judge:

       On June 30, 2021, Plaintiffs filed their First Amended Complaint asserting claims of breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, and fraudulent inducement, as well as for a declaratory judgment regarding certain terms contained in the parties' agreement.  Defendants now move to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction over Plaintiffs Music Traveler and Aleksey Igudesman, *forum non conveniens*, and failure to state a claim, or alternatively for a more definite statement.  For the reasons that follow, the motion to dismiss is granted, albeit only on *forum non conveniens* grounds.

**BACKGROUND**[1]

Plaintiff Keiichi Aritomo is a citizen of Japan whose primary residence is in Japan. Compl. ¶ 6. Plaintiff Joy Zhang is a citizen of the United States, but also primarily resides in Japan. *Id.* ¶ 7. Plaintiffs brought this action against three defendants: Youngjoo ("Julia") Rhee, a citizen of South Korea who resides in New York, New York; Aleksey Igudesman, a citizen of Germany who resides in Vienna, Austria, and Music Traveler Gmbh ("Music Traveler" or the "Company"), a business incorporated in the Republic of Austria. *Id.* ¶¶ 8–10; Igudesman Decl. ¶ 2. Music Traveler is a company that "solicits customers to book performance and rehearsal space for music, singing, and other artistic-related purposes," marketing itself as the parallel to AirBnB in the music space. Compl. ¶ 14.

Music Traveler was founded in or around 2016 by Defendants Rhee and Igudesman. Around that time, Rhee began soliciting Plaintiffs to invest in the company given their experience in the music industry. Plaintiffs allege that they were told that their experience would be necessary for the company's desired expansion into the Japanese market. *Id.* ¶ 17.

When Plaintiffs initially decided not to invest in Music Traveler in 2016, Rhee continued to solicit their investments. She again approached Plaintiffs in 2018 in an attempt to persuade them to reconsider. Plaintiffs met with Rhee in New York City on or around August 18, 2018, during which Rhee explained that the company was poised to expand into the Japanese market,

---

[1] On motions to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, or *forum non conveniens*, a court may consider affidavits, exhibits, and other materials beyond the pleadings. *See Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, 354 F. Supp. 3d 375, 380 (S.D.N.Y. 2018) (lack of subject matter jurisdiction); *Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, 477 F. Supp. 3d 241, 245 n.1 (S.D.N.Y. 2020) (lack of personal jurisdiction); *Kitaru Innovations Inc. v. Chandaria*, 698 F. Supp. 2d 386, 389 (S.D.N.Y. 2010) (*forum non conveniens*). Accordingly, the Court draws the following facts from the Complaint, which it must assume to be true, *see McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 298 n.1 (2d Cir. 2021), as well as the supporting declarations and exhibits attached to the parties' briefs.

but that it needed Plaintiffs' investment in order to do so.  "Plaintiffs made clear that their purpose of investing in the Company would be to lead the Japanese business." *Id.* ¶ 20.  Instead of investing directly into a Japanese subsidiary of the Company, however, Plaintiffs allege that Rhee told them that they had to invest in the company's main Austrian business until it was ready to establish the Japanese business.

Plaintiffs further assert that Defendants told them the Company was in the process of raising its second round of seed capital, and that the first round of investors included "many famous people, including Billy Joel, Hans Zimmer, and John Malkovich." *Id.* ¶ 21.  Plaintiffs allege that, upon information and belief, none of these individuals were actually investors. *Id.* ¶ 22.

During the fall of 2018, "Rhee made numerous solicitations of Plaintiffs to obtain their investment into the Company." *Id.* ¶ 24.  When Plaintiffs raised concerns because they wanted to invest directly into the Japanese entity of the company, Rhee "made [them] a number of promises." *Id.*  These promises included that Plaintiffs' investment "would be ring-fenced for the expansion of the Company into Japan," and that Plaintiffs would have leadership positions in the Company, "including at least one seat on the Company's Board of Directors and positions as COO of the main Company and CEO of the Japanese entity." *Id.*

While Plaintiffs sought more time to consider whether they wanted to invest, they were told by Rhee and Igudesman that "they did not have much time to consider the investment opportunity." *Id.* ¶ 25.  In mid-September of 2018, Rhee and Igudesman informed Plaintiffs that they were close to raising their initial target capital, but that the company needed Plaintiffs' investment by September 30, 2018 to reach that goal in order for the investment to be used to develop the Japanese business.  Specifically, "Rhee told Plaintiffs that their investment was needed to obtain a grant from certain Austrian government agencies, and that Plaintiffs' investment—

along with the matching funds received from the grant—would constitute the funds needed to expand the Company into Japan." *Id.* ¶ 27.  Rhee further informed Plaintiffs that "the funds would be 100% matched by the Austrian government (particularly the Vienna Business Agency) and that if Plaintiffs missed the deadline of September 30, 2018," Music Traveler would not receive those matching funds. *Id.*  If Plaintiffs did not make their investment by September 30, Rhee and Igudesman informed them that the company would never again be able to apply for those government grants.

Not wanting to rush their decision, Plaintiffs told Rhee that they were not going to be able to make their investment before September 30.  In response, Rhee told them that they in fact did *not* need to transfer the funds by September 30—instead, they only needed to promise to invest by then.  Plaintiffs expressed that they sought more time to negotiate the terms of the agreement, but Defendants told them that "it was necessary to first sign the [Simple Agreement for Future Equity (the 'SAFE')] before additional terms were considered given the purported deadline for receiving government grants." *Id.* ¶ 31.

"Based on Defendants' statements, Plaintiffs signed the [SAFE] on or around September 12, 2018." *Id.*  The SAFE contains a provision stating that "[a]ll rights and obligations hereunder will be governed by the laws of Austria or other future domicile locations of [the] Company, without regard to the conflicts of law provisions of such jurisdiction."  Rhee Decl. Ex. 1, § 5(d). Plaintiffs allege that they "agreed to sign the SAFE based on Defendants' representations that the SAFE was necessary for receiving government grants, but part of the agreement required negotiations on additional terms of Plaintiffs' involvement in the Company."  Compl. ¶ 31.  One piece of these subsequent negotiations included a trip to Vienna, Austria, from October 18–23, 2018, after which Plaintiffs would determine whether they "were satisfied that the investment was

worthwhile," and if so, "would transfer their investment funds." *Id.* ¶ 32.  "Defendants indicated that this approach would be acceptable."  *Id.*

On October 8, 2018, however, Rhee "changed course" and informed Plaintiffs that they needed to make their investment by that day "because the Austrian government required it in order to be eligible to receive grant matching funds."  *Id.* ¶ 33.  Plaintiffs assert that, because of this new deadline, they "were forced to rush their due diligence and submit funds before traveling to Vienna."  *Id.* ¶ 34.  On October 12, 2018, the parties agreed to amend the SAFE and Plaintiffs then transferred 100,000 Euros to Music Traveler.  *Id.* ¶ 35.

Plaintiff Zhang then traveled to Vienna as planned on October 22.  During this trip, Zhang asserts that "she uncovered a number of lies from the Defendants."  *Id.* ¶ 36.  The first lie that Plaintiffs allege Zhang discovered was that Defendants did not actually require Plaintiffs' investment in order to obtain the matching grant funds from the Austrian government.  Rather, upon contacting the Vienna Commerce Agency, Zhang was informed that the application period was open through the end of 2019.  Instead of the October 8, 2018 date that Defendants had conveyed, the application period was actually open until December 31, 2019.  Additionally, the government agency told Zhang that, contrary to what Defendants had told her, there was no threshold investment amount that needed to be met in order to submit an application.

Following this discovery, Defendants told Zhang that Plaintiffs' investment was not going to be used to develop the Company's Japanese branch, but rather would be allocated to a "separate, unrelated project related to a 'Music Box' performance space in Vienna, Austria."  *Id.* ¶ 38.  Rhee explained that the reason why Music Traveler was unable to transfer money into a subsidiary account in Japan was "because the Vienna Commerce Agency was monitoring the Company's account and prohibited transfers."  *Id.* ¶ 40.  Plaintiffs allege that this too was not true.

Feeling that they had been misled, Plaintiffs attempted to contact Rhee and Igudesman "repeatedly" to discuss the situation, but Defendants "refused to speak with" them. *Id.* ¶ 41. On November 2 and 3, 2018, Plaintiffs emailed Defendants. Several days later, on November 7, 2018, Samuel Ollunga responded, purporting to be a lawyer representing the company. In his email, Ollunga stated that "Plaintiffs were not part of the Company and were not entitled to Company information." *Id.* ¶ 42.

At this point, Plaintiffs reported Defendants to Austrian, Japanese, and United States officials. On December 14, 2018, Rhee spoke again with Plaintiffs, promising that if "the Company did not open a branch . . . in Japan by the second quarter of 2019, the Company would return to Plaintiffs all money owed to them, specifically including all money invested in the Company on or around September 12, 2018." *Id.* ¶ 44. Plaintiffs allege that, to date, Music Traveler has not opened a Japanese branch, nor has it paid Plaintiffs any money owed to them under their agreements or returned Plaintiffs' investment.

On November 4, 2020, Music Traveler and Rhee filed a summons without a complaint against Aritomo and Zhang in New York State court, alleging, among other claims, defamation, breach of contract of the SAFE and its amendment, and tortious interference. Holstad Decl. Ex. 1. In that suit, the parties stipulated to removal to the Southern District of New York in the event that a complaint was filed. Holstad Decl. Ex. 4 (as corrected by letter dated August 18, 2021). That lawsuit settled on February 17, 2021, without a complaint being filed, Rhee Supp. Decl. ¶ 11, and Plaintiffs subsequently commenced this action several months later. Music Traveler has also sued Plaintiffs in Austria for defamation in a lawsuit that, to the Court's knowledge, is ongoing. Rhee Decl. ¶¶ 48–49; Rhee Decl. Ex. D.

Plaintiffs filed their First Amended Complaint (the "Complaint") on June 30, 2021, asserting claims of breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, and fraudulent inducement, as well as for a declaratory judgment as to certain terms contained in the parties' agreements.  Defendants now move the Court to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction over Plaintiffs Music Traveler and Aleksey Igudesman, *forum non conveniens*, and failure to state a claim, or alternatively for a more definite statement.  Along with their brief, Defendants attached as exhibits the SAFE and its amendment. Rhee Decl. Exs. 1 & 3.  Plaintiffs have not called the authenticity of these documents into question.

Following a discussion at oral argument on the motion held on March 25, 2022, the Court permitted Defendants to submit additional information regarding the adequacy of an alternative forum for purposes of their *forum non conveniens* argument.  Defendants did so on April 13, 2022, and Plaintiffs responded on May 2, 2022.  For the reasons that follow, the motion to dismiss for lack of subject matter jurisdiction and lack of personal jurisdiction is denied, but the motion to dismiss on *forum non conveniens* grounds is granted.

## DISCUSSION

### I.      Subject Matter Jurisdiction

#### A.      Legal Standard

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332(a). While a Plaintiff invoking federal diversity jurisdiction must demonstrate a "reasonable probability" that the amount-in-controversy requirement is satisfied, *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994), there exists "a rebuttable presumption that the face of the complaint is a good faith representation of the

actual amount in controversy," *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017). "A defendant may rebut that presumption by demonstrating to a legal certainty that the plaintiff could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums." *Id.* (internal quotation marks omitted); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) ("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.").

### B.     Application

Defendants argue that the Court lacks diversity jurisdiction over the matter because the amount in controversy requirement is not met.  In so asserting, Defendants argue that Aritomo was the only party to sign the initial SAFE, and that he alone invested a total of 50,000 Euros (the equivalent of $58,475 U.S. dollars at the time).  A third party, Masayori Shoji, Defendants argue, entered into a separate SAFE with Defendants for 50,000 Euros on September 12, 2018.  Rhee Decl. ¶ 29, Exhibit B.  According to Defendants, both Aritomo and Zhang then agreed to an amendment to the SAFE, which provided that each of them would receive 2,500 Euros (equal to $2,924) for the introduction of Shoji to Music Traveler.  *Id.* ¶ 38, Exhibit C.  Defendants further argue that Zhang did not invest any money in Music Traveler, and at most could only recover 2,500 Euros from the amended agreement.

Plaintiffs respond that Shoji appropriately assigned his rights in his investment to them, which Defendants dispute.  Regardless, Plaintiffs argue that the Complaint adequately alleges that they transferred 100,000 Euros to Defendants.  Compl. ¶ 35.  Specifically, the Complaint alleges that "Plaintiffs directed their bank to transfer one hundred thousand Euros (€100,000) to Music Traveler."  *Id.*  Plaintiffs' bank records support this, Holstad Decl., Ex. 2, and Defendants concede in their reply brief that Aritomo transferred €50,000 on behalf of himself and €50,000 on behalf

of Shoji from his bank to Music Traveler, Defs. Reply Br. at 3.  Additionally, Plaintiffs argue that they are seeking additional damages beyond just recovery of the 100,000 Euros, including damages for failing to develop the Japanese subsidiary, failing to install Plaintiffs in leadership positions, and failing to compensate Plaintiffs for soliciting additional investments.  Compl. ¶¶ 55–57.

The Court agrees with Plaintiffs and finds Defendants' allegations insufficient to overcome the presumption that the Complaint contained a good faith representation of the amount in controversy.  While there may be a dispute over whether Shoji assigned his legal rights in the investment to Plaintiffs, Plaintiffs have adequately alleged that they transferred 100,000 Euros to Music Traveler from their bank account and that this lawsuit seeks to recover that amount, plus additional damages.  In light of that, the Court cannot find to "a legal certainty," *Pyskaty*, 856 F.3d at 223, that the plaintiffs could not recover over $75,000.

## II.     Personal Jurisdiction

### A.     Legal Standard

To resolve questions of personal jurisdiction under New York law, courts engage in a two-step analysis.  First, courts determine whether the defendant is subject to jurisdiction under the law of the forum state.  *See Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014).  For a plaintiff to demonstrate personal jurisdiction over a defendant under New York state law, the plaintiff must show "either that [the defendant] was 'present' and 'doing business' [in New York] within the meaning of [C.P.L.R.] § 301, [general jurisdiction], or that [the defendant] committed acts within the scope of New York's long-arm statute, [C.P.L.R.] § 302, [specific jurisdiction]." *Schultz v. Safra Nat. Bank of New York*, 377 F. App'x 101, 102 (2d Cir. 2010). Second, a court "must assess whether [its] assertion of jurisdiction under these laws

comports with the requirements of due process." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).

To defeat a motion brought pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant. *Id.* at 566. The showing a plaintiff must make to overcome a defendant's motion to dismiss for lack of jurisdiction "varies depending on the procedural posture of the litigation." *Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). Where there has been no discovery, as is the case here, "a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). A court does "not draw 'argumentative inferences' in the plaintiff's favor," but will "construe jurisdictional allegations liberally and take as true uncontroverted factual allegations." *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

### 1.      General Jurisdiction

"Under New York law, a foreign corporation is subject to general personal jurisdiction in New York if it is 'doing business' in the state." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000); *see* CPLR § 301. The Supreme Court in *Daimler AG v. Bauman*, however, rejected the theory that general jurisdiction may attach in every state where a corporation "engages in a substantial, continuous, and systematic course of business." 571 U.S. 117, 138 (2014). Rather, it identified as "paradigm bases for general jurisdiction" a corporation's principal place of business and place of incorporation. *Id.* at 137 (alterations omitted). The Second Circuit has read *Daimler* to establish that, "except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016). "[G]eneral

jurisdiction extends beyond an entity's state of incorporation and principal place of business only in the exceptional case where its contacts with another forum are so substantial as to render it 'at home' in that state." *Sonera Holding*, 750 F.3d at 223 (2d Cir. 2014).

## 2. Specific Jurisdiction

The other method of establishing personal jurisdiction is specific jurisdiction. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). Plaintiffs rely on two portions of New York's long-arm statute in asserting specific jurisdiction over the Defendants: C.P.L.R. §§ 302(a)(1) and 302(a)(2). First, under C.P.L.R. § 302(a)(1), jurisdiction is proper where the defendant, "who in person or through an agent," "transacts any business within the state," so long as the cause of action "aris[es] from" the business transacted within the state. C.P.L.R. § 302(a)(1); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012). In order for a defendant's conduct to "constitute a 'transaction of business' subjecting her to section 302(a)(1) jurisdiction, 'it is essential in each case that there be some act by which the defendant purposefully avails [itself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983) (quoting *George Reiner & Co., Inc. v. Schwartz*, 363 N.E.2d 551, 553 (N.Y. 1977)).

A cause of action arises out of a defendant's New York transactions when it is "sufficiently related to the business transacted that it would not be unfair to deem it to arise out of the transacted business." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 59 (2d Cir. 1985). To determine whether a sufficient nexus exists, a court must evaluate the "totality of the circumstances surrounding defendants' activities in New York in connection with the matter giving rise to the lawsuit." *Id.* at 60. Moreover, because § 302(a)(1) is a "single act statute," proof of a single

transaction in New York may suffice to invoke jurisdiction, so long as that transaction is sufficiently substantive and purposeful. *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (N.Y. 1988).

With regard to business meetings specifically, courts have found that meetings need not be "solely for business purposes," so long as the relevant discussions increased "the likelihood of a more solid business relationship between the parties." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 367 (2d Cir. 1986); *see also NW Direct Design & Mfg., Inc. v. Glob. Brand Mktg., Inc.*, No. 98-CV-4756 (LAP), 1999 WL 493348, at *3 (S.D.N.Y. July 12, 1999). In fact, "New York courts routinely find that negotiations involving [one or two] New York meetings . . . suffice for jurisdiction, so long as they were substantive," *see Sherwin-Williams Co. v. C.V.*, No. 14-CV-6227 (RA), 2016 WL 354898, at *3 (S.D.N.Y. Jan. 28, 2016) (gathering cases), or were "directly related to the creation" of the agreement at issue in the case, *Zainal v. Am.-Europe-Asia Int'l Trade & Mgmt. Consultants*, 248 A.D.2d 279, 279 (N.Y. App. Div. 1998).

In addition to basing jurisdiction on the transaction of business, jurisdiction is also proper where a defendant "commits a tortious act within the state." C.P.L.R. § 302(a)(2). "[A] defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2)." *Thackurdeen v. Duke Univ.*, 660 F. App'x 43, 46 (2d Cir. 2016).

### 3.     Due Process

Even after concluding that jurisdiction is proper under New York's long-arm statute, the Court must also determine whether asserting personal jurisdiction over a defendant comports with due process. *Ehrenfeld v. Mahfouz*, 489 F.3d 542, 547 (2d Cir. 2007). To exercise personal jurisdiction over an out-of-state defendant, the Due Process Clause requires that the defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does

not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).  In evaluating whether a defendant has sufficient minimum contacts, the "crucial question is whether the defendant has purposefully avail[ed] itself of the privilege of conducting activities within the forum State" such that it "should reasonably anticipate being haled into court there." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242–43 (2d Cir. 2007).  "[A]s a practical matter, the Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances than N.Y. C.P.L.R. § 302, and a foreign defendant meeting the standards of § 302 will satisfy the due process standard." *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 469 (S.D.N.Y. 2008) (citing *United States v. Montreal Tr. Co.*, 358 F.2d 239, 242 (2d Cir. 1966)).

### B.    Application

#### 1.    Music Traveler

The Complaint alleges that Music Traveler is incorporated in the Republic of Austria and has its principal place of business in both New York, New York, and Vienna, Austria, and is thus subject to general personal jurisdiction in New York.  Compl. ¶ 10; Pls. Br. at 12–14.  Defendants contest this, affirming that Music Traveler's principal place of business is solely in Vienna, and not in New York. The Court agrees with Defendants.  In support of their assertion that Music Traveler conducts business out of New York, Plaintiffs point to Music Traveler's website that lists New York as one of the company's "most popular cities," a 2017 business plan that listed New York as an "especially critical market" and stated that "Music Traveler ha[d] team members already in New York," advertisements on social media, and an email to investors explaining that Music Traveler was partnering with a New York organization to try to expand into New York and throughout the United States.  Holstad Decl. Exs. 5, 6 at 39, 7–11.  Despite Plaintiffs' arguments

to the contrary, none of these documents suggest that Music Traveler's principal place of business is anywhere other than Vienna.  Rather, the documents on which Plaintiffs rely refer to future plans and hopes to expand from Vienna worldwide, including into the New York market.  Indeed, the section of the business plan referencing New York is in a portion specifically addressing hopes to expand the business "Beyond Vienna."   Holstad Decl. Ex. 6 at 39. Therefore, for general jurisdiction purposes, Music Traveler is not "essentially at home" in New York, nor are there any assertions that this is an "exceptional case" where general personal jurisdiction lies.  *See Brown*, 814 F.3d at 628.

While Plaintiffs have not established that Music Traveler is subject to general jurisdiction in New York, they have sufficiently alleged that it is subject to specific jurisdiction.  The only connection between Plaintiffs' claims and New York is a single meeting between Plaintiffs and Rhee in August of 2018.  Critically, however, that meeting was "directly related to the creation" of the agreement at issue in this case.  *See Zainal*, 248 A.D.2d at 279.  It was during this meeting that Rhee continued to solicit Plaintiffs' investment in Music Traveler, an objective that she ultimately achieved when the parties entered into the SAFE. Compl. ¶¶ 19–20.  And as the language of § 301(a) itself imports the actions of an agent onto a corporation, Rhee's actions as Music Traveler's CEO can support jurisdiction over Music Traveler.  Thus, while only one New York meeting occurred, it is sufficient to establish jurisdiction under § 302(a)(1).  *See Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679, 697 (S.D.N.Y. 2018) ("Whether a single meeting in New York is sufficient to establish personal jurisdiction under Section 302(a)(1) depends on the significance of the meeting to the claim and the relationship between the meeting and the wrongful act. . . .  Jurisdiction is potentially appropriate on the basis of a single meeting when the meeting plays a significant role in establishing or substantially furthering the relationship of the parties."

(internal quotation marks omitted)).  Because the Court has personal jurisdiction over Music Traveler pursuant to C.P.L.R. § 302(a)(1), it need not consider whether jurisdiction is also proper under § 302(a)(2).[2]

As the requirements of § 302(a)(1) are satisfied as to Music Traveler, the due process standard is similarly satisfied. Because Music Traveler, through its CEO and agent Rhee, "purposefully avail[ed] itself of the privilege of conducting activities within the forum state" by meeting with Plaintiffs to solicit their investment, Music Traveler could have "reasonably anticipate[d] being haled into court" here. *Best Van Lines, Inc.*, 490 F.3d at 242–43.

### 2.    Aleksey Igudesman

Plaintiffs do not assert that Plaintiff Igudesman, a German citizen who resides in Austria, is subject to general jurisdiction in New York.  Rather, Plaintiffs argue that he is subject only to specific jurisdiction.  Because Igudesman was not at the New York meeting in August of 2018, and the Complaint contains no other allegations connecting him to New York, the only way for the Court to have jurisdiction over him is if Rhee's actions on behalf of Music Traveler can be imputed to him.

To establish personal jurisdiction over an out-of-state corporate officer based on the corporation's activities within the state, a plaintiff must show that the officer is a "primary actor . . . in the [corporation's] transaction in New York" and not merely "some corporate employee." *Retail Software Servs., Inc. v. Lashlee,* 854 F.2d 18, 22 (2d Cir. 1988); *see also Giuliano v. Barch*, No. 16-CV-0859 (NSR), 2017 WL 1234042, at *9 (S.D.N.Y. Mar. 31, 2017).  "Even where the corporate officer was 'principally involved' in the transaction that gave rise to Plaintiff's claim, courts have held that personal jurisdiction cannot be established absent an

---

[2] In light of the Court's finding that Music Traveler is subject to personal jurisdiction, it need not address Plaintiffs' arguments concerning jurisdictional waiver.

allegation that the company's activity was performed for the corporate officer's benefit and with his knowledge and consent." *Gibson-Hawley v. USA Management LLC*, 17 Civ. 4346 (FB)(PK), 2018 WL 4691576, at *4 (E.D.N.Y. Sept. 14, 2018), *report and recommendation adopted*, 2018 WL 4689000 (E.D.N.Y. Sept. 28, 2018) (citing *Beatie & Osborn LLP v. Patriot Scientific Corp.*, 431 F.Supp.2d 367, 389–90 (S.D.N.Y. 2006)).

While it is undisputed that Igudesman is a co-founder of Music Traveler, and worked alongside Rhee in soliciting Plaintiffs' investment from Vienna, no facts suggest that he was involved in any way with the New York meeting between Rhee and Plaintiffs. The Complaint does not contain any allegations that Igudesman had any knowledge of the New York meeting, or that he consented to it.

In support of the argument that Music Traveler's actions can be imputed to Igudesman as its co-founder, Plaintiffs cite *Interventure 77 Hudson LLC v. Falcon Real Estate Invest. Co.*, No. 6653913/13, 2014 WL 4613034 (N.Y. Sup. Ct. Sept. 08, 2014). In *Interventure*, however, the court only exercised jurisdiction "over officers for their actions on behalf of a company" after finding that the agents "often traveled to [the company's] New York office in order to assist [the company] in connection with their fraud on plaintiffs." *Id.* at *8. By contrast, the Complaint here contains no indication that Igudesman was personally involved with the solicitation of Plaintiffs' investment in New York.

Accordingly, jurisdiction cannot be imputed on Igudesman based on Music Traveler's actions under either C.P.L.R. §§ 302(a)(1) or 302(a)(2). Because Plaintiff has failed to establish that Igudesman has any connection to New York, the Court finds that it does not have personal jurisdiction over him.

### III.   *Forum Non Conveniens*

### A.   **Legal Standard**

*Forum non conveniens* "is a discretionary device permitting a court in rare instances to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir. 2000). "A federal court has discretion to dismiss a case on the grounds of *forum non conveniens* when an alternative forum has jurisdiction to hear [the] case, and . . . trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or . . . the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (alterations in original). District courts "enjoy broad discretion in applying [the] principle" of *forum non conveniens*. *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005). The Second Circuit has crafted a three-step process to guide the exercise of that discretion:

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

*Id.* (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73–74 (2d Cir. 2001) (en banc)). A defendant moving to dismiss on *forum non conveniens* grounds bears the burden of proof. *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 476 (2d Cir. 2002); *see also BlackRock, Inc. v. Schroders PLC*, No. 07 Civ. 3183 (PKL), 2007 WL 1573933, at *1 (S.D.N.Y. May 30, 2007).

### 1.    Degree of Deference Due to the Plaintiff's Choice of Forum

The Court must begin with a "strong presumption in favor of the plaintiff's choice of forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). "Indeed, it is generally understood that, 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *Norex*, 416 F.3d at 154 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  Nonetheless, "the degree of deference given to a plaintiff's forum choice [can vary] with the circumstances." *Iragorri*, 274 F.3d at 71.

As the Second Circuit noted in *Pollux Holding Ltd. v. Chase Manhattan Bank*, "when a plaintiff sues in his home forum, that choice is generally entitled to great deference, because it is presumed to be convenient.  In contrast, when a foreign plaintiff sues in a United States forum such choice is entitled to less deference because one may not easily presume that choice is convenient." 329 F.3d 64, 71 (2d Cir. 2003).  "[I]n many cases, a foreign plaintiff's chosen forum in the United States will not be any more discernibly convenient than the alternatives and, as a result, will not merit a presumption to the contrary." *Medien Patent Verwaltung AG v. Warner Bros.*, 749 F. Supp. 2d 188, 191 (S.D.N.Y. 2010).

Similarly, the choice of forum of a "U.S. citizen living abroad" is afforded a "diminished degree of deference." *Varnelo v. Eastwind Transp., Ltd.*, No. 02-cv-2084, 2003 WL 230741, at *12 (S.D.N.Y. Feb. 3, 2003).  This is because "it would be less reasonable to assume" that an "expatriate U.S. citizen residing permanently in a foreign country bring[ing] suit in the United States" chose this forum "based on convenience." *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 73 n.5 (2d Cir.2001). As the Second Circuit has explained, U.S. residence supports a plaintiff's choice of a U.S. forum "not because of chauvinism or bias in favor of U.S. residents" but "rather because the greater the plaintiff's ties to the plaintiff's chosen forum, the more likely it is that the

plaintiff would be inconvenienced by a requirement to bring the claim in a foreign jurisdiction." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 102 (2d Cir. 2000).

"[T]he deference due depends on the facts of the individual case: '[t]he more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice.'" *Medien*, 749 F. Supp. at 191 (quoting *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 71 72 (2d Cir. 2001) (en banc)). The Second Circuit in *Iragorri* identified factors that are relevant to determining whether a plaintiff's choice of forum was motivated by genuine convenience: "the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense." 274 F.3d at 72. In contrast, a plaintiff's choice of forum to gain a tactical advantage is not considered legitimate. "[T]actical advantage includes benefits from 'local laws,' the 'generosity of juries,' a defendant's 'unpopularity in the region,' or 'the inconvenience and expense to the defendant resulting from litigation in that forum.'" *Tomita Techs. USA, LLC v. Nintendo Co.*, 818 F. Supp. 2d 770, 772 (S.D.N.Y. 2011) (quoting *Iragorri*, 274 F.3d at 72). But "[e]ven if the U.S. district was not chosen for forum-shopping reasons, there is nonetheless little reason to assume that it is convenient for a foreign plaintiff." *Iragorri*, 274 F.3d at 71.

Plaintiff Aritomo is a citizen and resident of Japan. Plaintiff Zhang is a citizen of the United States, but resides in Japan. Given that neither plaintiff resides in the United States, it is "less reasonable to assume" that they chose a New York forum "based on convenience." *Id.* at 73 n.5. The record does include certain facts supporting the conclusion that genuine convenience informed Plaintiffs' choice of forum. Rhee, one of the defendants, lives in New York, and she and

Music Traveler previously filed a summons against Plaintiffs in New York state court. Additionally, as discussed in more detail below, Plaintiffs' financial circumstances suggest that it may be more expensive for them to file suit elsewhere.

The Court, however, finds these circumstances insufficient to overcome the dearth of connections between the underlying dispute and this forum. Indeed, other factors suggest that Plaintiffs' choice of forum should be afforded a diminished degree of deference. Other than Rhee, there are no witnesses or other relevant third parties in New York. As described above, Defendant Igudesman is not subject to personal jurisdiction in New York. And while the Court ultimately finds that Music Traveler is, it does so based solely on the occurrence of one meeting held in New York. Additionally, it is "unclear that the lawsuit as a whole has sufficient connections to this District to warrant deference to [Plaintiffs'] choice of forum." *BlackRock*, 2007 WL 1573933, at *4. With the exception of the single New York meeting, all other activity related to the underlying controversy took place in Austria and Japan. The SAFE specifically provides that it is governed by Austrian law, *see* Rhee Decl. ¶ 27, and while Plaintiffs present evidence that Music Traveler hoped to expand from Austria into the global market, including in the United States and specifically New York, this is insufficient to support the conclusion that Plaintiffs chose New York based on convenience. While the Court does not suggest that Plaintiffs chose to sue in this district for forum shopping reasons, there is little evidence from which it can conclude that New York is a more convenient location. Rather, the totality of the *Iragorri* factors weigh in favor of a finding that Plaintiffs' choice of forum does not warrant substantial deference.

### 2.    Adequacy of an Alternative Forum

The second step of the analysis involves considering whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. A complaint may only

be properly dismissed under the doctrine of *forum non conveniens* if an adequate alternative forum for the dispute exists. *Iragorri*, 274 F.3d at 73; *see Piper*, 454 U.S. at 254 n.22. The moving party bears the burden of demonstrating that an adequate alternative forum exists. *Bank of Credit & Commerce Int'l (OVERSEAS) Ltd. v. State Bank of Pak.*, 273 F.3d 241, 248 (2d Cir. 2001). "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Norex*, 416 F.3d at 157.

Both conditions are met here. All three defendants in this case are amenable to service of process in Austria, and Austrian courts permit litigation of the subject matter of the instant dispute. Defendants rely on a declaration of Thomas Voppichler—an Austrian lawyer whose law firm represents Defendants in the pending Austrian proceedings against Plaintiffs—in support of the assertion that this dispute could be brought in Austria. In his declaration, Voppichler explains that, pursuant to the Austrian Jurisdiction Act ("*Jurisdiktionsnorm*"), in order to initiate suit in Austria a court must have personal jurisdiction over each defendant. Under the Austrian Jurisdiction Act, "the general personal jurisdiction of a person is determined by such person's domicile or habitual residence," and the "general personal jurisdiction of a legal entity is determined by its registered office." Voppichler Decl. ¶ 4. As Music Traveler is an Austrian company registered in Vienna, it is subject to personal jurisdiction there. Similarly, as Igudesman resides in Vienna, he too is amenable to service of process there. While Rhee is not a resident of Austria, she has submitted a signed declaration consenting to personal jurisdiction in Austria should the Court dismiss this action and Plaintiffs initiate suit against her there. Third Rhee Decl. ¶ 2. Austrian law allows for civil suits to proceed against a person there if that person has consented to jurisdiction. Voppichler Decl. ¶ 4.

Additionally, Defendants have similarly met their burden of establishing that Austria is an adequate alternative forum by explaining that Austrian courts can permit the litigation of the subject matter of this dispute.  All the causes of action that Plaintiffs bring "have analogs under Austrian law."  Voppichler Decl. ¶ 5.  Specifically:

> Under [ ] Austrian civil law, every person . . . is entitled to claim compensation from the damaging party for damage caused to them due to fault.  The damage may have been caused by a breach of a contractual obligation or without reference to a contract.  This means that Austrian civil law provides a basis for both contractual and tortious claims for damages (Section 1295 et seq. Austrian Civil Code, *Allgemeines bürgerliches Gesetzbuch*).

> Under Austrian civil procedural law (Section 226 et seq. Austrian Civil Procedures Code, *Zivilprozessordnung*), the plaintiff may bring an action, (i) for performance (*Leistungsklage*), which seeks an act, such as payment of a certain sum of money, or an omission, (ii) for declaratory relief (*Feststellungsklage*), or (iii) requesting a change of a legal right or status (*Rechtsgestaltlungsklage*).

*Id.*

The instant suit concerns Defendants' alleged fraudulent inducement of Plaintiffs to invest in Music Traveler and their subsequent breach of contractual obligations under the SAFE and its amendments.  Plaintiffs argue that Defendants have not demonstrated "whether Austria recognizes a claim for breach of the covenant of good faith and fair dealing or a claim for conversion, or whether Austrian courts can issue declaratory relief declaring that an event of default has occurred under the contract at issue."  Pls. Supp. Letter at 3.  But "[t]he availability of an adequate alternative forum does not depend on the existence of the identical cause[s] of action in the other forum, nor on identical remedies."  *Norex*, 416 F.3d at 158.  Rather, it depends on whether the alternative forum "permits litigation of the subject matter of the dispute."  *Id.* at 157.  Because Austrian civil law allows for suits arising out of both breach of contract and related tortious harms, the Court finds that Austria allows for litigation of the same subject matter.

### 3.      Private and Public Interest Factors

Finally, if an alternative forum exists, the Court must next weigh the private and public interests implicated in the choice of forum.  The private interest factors address the convenience to the litigants.  These factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Iragorri*, 274 F.3d at 73–74.  In considering these factors, "a district court weighs the difficulties a defendant would suffer if the dispute were adjudicated in the present forum against the difficulties a plaintiff would face if the case were dismissed and the plaintiff were thus forced to bring suit in an alternate forum."  *BlackRock*, 2007 WL 1573933, at *8.

A court must also weigh the public interest factors at stake.  These factors include "(1) the consideration that jurors should not be obligated to decide disputes with no relation to their community; (2) the fact that where a case affects many people, a forum that allows those affected to view the suit, rather than learn of it by report from a foreign forum, is preferable; (3) the forum's local interest in having its own controversies decided at home; and (4) the potential pitfalls that stem from a diversity case being heard in a foreign forum that must resolve conflicts of law and substantive law problems, rather than a forum familiar with the state law to be applied to the case."  *Id.* at *10 (citing *Gilbert*, 330 U.S. at 508–09).

The Court finds the private factors in this case to be neutral, as there exist considerable concerns weighing both in favor of and against dismissal.  Beginning with the private factors that weigh in favor of a non-New York forum, the Court notes that while Rhee lives in New York, the rest of the witnesses appear to be located in Austria or, likely to a lesser extent, Japan.  Music

Traveler is an Austrian company with offices in Austria.  And a crucial fact that Plaintiffs rely on is that Zhang uncovered "a number of lies" regarding Defendants' government grant application after speaking with officials from the Vienna Commerce Agency while in Austria.  Compl. ¶ 36. With respect to witnesses and access to proof, litigating this matter in New York, practically speaking, would be much more difficult, inefficient, and expensive than litigating it in Austria.

On the other hand, Plaintiffs argue that the financial burden imposed on them would be too great if they had to initiate suit in Austria.  Specifically, Plaintiffs explain that they retained their current counsel on a pro bono basis, and "have not been able to find any attorney [in Austria] to take the matter pro bono."  Second Zhang Decl. ¶ 11.  According to Zhang, "[n]eeding to litigate this action in Austria [would] add considerable costs," so it "[would] be financially beneficial" to Plaintiffs to litigate in New York.  *Id.* ¶ 13.  Zhang asserted that, without pro bono representation, they "will be unable to proceed with [their] claims against Defendants if this action is required to be brought in Austria."  *Id.*

The Court is sympathetic toward Plaintiffs' circumstances, and appreciates that the potentially prohibitive cost of retaining counsel in Austria is a factor weighing against dismissal of the case.  That said, the Court is not persuaded that the inability to retain pro bono counsel abroad, on its own, is reason to litigate the case in New York.  The Second Circuit has made clear that "a plaintiff's financial hardships" resulting from a lack of affordable counsel is "only one factor to be weighed in determining the balance of convenience," and it should not be "determinative" in the face of "overwhelming public and private interests weighing in favor of dismissal." *Murray v. British Broadcasting Corp.*, 81 F.3d 287, 292 (2d Cir. 1996); *see also Flores v. S. Peru Copper Corp.*, 253 F. Supp. 2d 510, 542 (S.D.N.Y. 2002) ("Even if . . . plaintiffs have

24

established a financial inability to obtain legal representation by any means in Peru, that does not require this Court to retain jurisdiction.").

Indeed, the public factors here weigh heavily in favor of dismissal of the suit on *forum non conveniens* grounds.  New York jurors have no connection to this dispute, whereas Austria has an interest in deciding this matter related to an Austrian company.  In addition, this case may very well require the application of Austrian law.  "[T]he likelihood that [foreign] law would govern lends weight to the conclusion that the suit should be prosecuted in that jurisdiction." *Calavo Growers of Cal. v. Generali Belg.*, 632 F.2d 963, 967 (2d Cir. 1980); *see also BlackRock*, 2007 WL 1573933, at *10 ("[A]lthough a definitive determination that German substantive law applies to this case would be premature, the mere need to 'untangle problems in conflict of laws' is part of the Court's consideration in evaluating the public interest factors.") (quoting *Peregrine Myanmar v. Segal*, 89 F.3d 41, 47 (2d Cir. 1996)).

Thus, while the private factors are at best neutral, the public factors strongly favor dismissal of this case in favor of trial in Austria.  Given that Austrian courts are an adequate available alternative forum, and in light of the reduced deference awarded to Plaintiffs' choice of forum in this case, the case is hereby dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted.  The Clerk of Court is respectfully directed to terminate the motions pending at docket entries 8 and 9.

Dated:     November 22, 2022
           New York, New York

Ronnie Abrams
United States District Judge